Michael R. Crosner (Bar No. 41299)
Zachary M. Crosner (Bar No. 272295)
Blake Jones (Bar No. 211221)
Nikki Trenner (Bar No. 316007)
**CROSNER LEGAL, PC**
9440 Santa Monica Blvd., Ste. 301
Beverly Hills, CA 90210
Tel: (310) 496-5818
Fax: (310) 510-6429

Norman B. Blumenthal (SBN 68687)
Kyle R. Nordrehaug (SBN 205975)
Aparajit Bhowmik (SBN 248066)
**BLUMENTHAL NORDREHAUG BHOWMIK DE BLOUW LLP**
2255 Calle Clara
La Jolla, CA 92037
Tel: (858) 551-1223
Fax: (858) 551-1232

Attorneys for MORIAH HOLTEGAARD, individually and on behalf of all others similarly situated.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| MORIAH HOLTEGAARD and ANTHONY LEON, as individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HOWROYD-WRIGHT EMPLOYMENT AGENCY, INC. DBA APPLEONE CORPORATION SERVICES, a California corporation; SIERRA ALUMINUM COMPANY, a California corporation; SAMUEL, SON & CO. (USA) INC., a Delaware Corporation; and DOES 2-50, Inclusive,<br><br>Defendants. | Case No. 5:20-cv-00509 JGB (KKx)<br><br>**JOINT STIPULATION AND REQUEST FOR APPROVAL OF SETTLEMENT OF PAGA CLAIMS AND DISMISSING ACTION WITH PREJUDICE**<br><br>Complaint Filed: November 8, 2019<br>District Judge: Hon. Jesus G. Bernal<br>Magistrate Judge: Hon. Kenly K. Kato |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Plaintiff Moriah Holtegaard ("Plaintiff") and Defendants Howroyd-Wright Employment Agency, Inc. dba AppleOne Employment Services ("Defendant AppleOne") Sierra Aluminum Company ("Defendant Sierra Aluminum:"), and Defendant Samuel, Son & Co. (USA) Inc. ("Defendant Samuel, Son & Co.") (collectively, "Defendants") have reached a settlement that resolves this matter in its entirety. The terms of the settlement are set forth in the Joint Stipulation of PAGA Settlement and Release ("Settlement Agreement") which is attached to the Declaration of Zachary Crosner, Esq. ("Crosner Decl.") as **Exhibit "1."**

By and through this Stipulation, the Parties[1] present this settlement, which involves the release of claims under the California Private Attorneys General Act of 2004, Cal. Lab. Code § 2698, et seq. ("PAGA"), to the Court for approval. Accordingly, the Parties stipulate to the following:

## BACKGROUND

1. Plaintiff filed a class and representative PAGA action against Defendant AppleOne on November 8, 2019, after complying with the administrative requirements set forth in Cal. Lab. § 2699.3. Crosner Decl. ¶ 3; **Exhibit "2"** to Crosner Decl. Plaintiff later filed a First Amended Complaint naming Defendant Sierra Aluminum on December 19, 2019, and a Second Amended Complaint naming Defendant Samuel, Son & Co. and foregoing all class claims, alleging a single cause of action under the PAGA, on April 21, 2020. In meeting and conferring with Defendants regarding multiple motions to dismiss allegations in the operative complaints, Plaintiff subsequently filed Third, Fourth, and Fifth Amended Complaints. Plaintiff submitted conformed copies of all complaints to the LWDA on March 22, 2021. Crosner Decl. ¶ 4; **Exhibits "3" and "4."**

---

[1] Plaintiff and Defendants are collectively referred to herein as the "Parties."

2. Prior to mediation, the Parties engaged in a voluntary disclosure of documents and information through which they ascertained the number of aggrieved employees and the number of pay periods worked by them during the applicable statutory period to ascertain the potential value of Plaintiff's PAGA claims. Crosner Decl. ¶¶ 5, 10.

3. The Parties thereafter engaged in arm's length negotiations via mediation with respected mediator, Louis Marlin, and reached a resolution of the PAGA claims asserted in this action. Based on the documents and information disclosed, Plaintiff asserts that the maximum value of the claims exceeds $9.5 million. The amount of the settlement is $215,0000, or over 2% of what Plaintiff asserts is the maximum recoverable penalties (based on approximately 709 aggrieved employees who worked an aggregate 5,739 pay periods at the rate of $100 for the initial violation and $200 for each violation thereafter). Crosner Decl. ¶¶ 6, 43.

4. On March 15, 2021, the Parties executed the Settlement Agreement. Crosner Decl. ¶ 7; **Exhibit "1."**

5. On March 22, 2021, the proposed settlement agreement was submitted to the LWDA as required by Cal. Lab. Code § 2699(l)(2) prior to it being submitted to the Court. Crosner Decl. ¶ 9; **Exhibit "5."**

6. Under California law, the State of California may assess and collect civil penalties from employers for violations of certain provisions of the Labor Code. *See* Cal. Lab. Code § 2699(a). However, under the PAGA, an "aggrieved employee" may act as a proxy or agent of the state's labor law enforcement agencies and bring a civil action to recover civil penalties "on behalf of himself or herself and other current or former employees" if the employee gives "written notice by online filing to the Labor Workforce Development Agency and by certified mail to the employer of the specific provisions of [the Labor Code] alleged to have been violated," and the State thereafter decides not to investigate, as was the case here. Cal. Lab. Code § 2699.3.

7. Cal. Lab. Code § 2699(l)(2) provides that the trial court shall "review and approve any settlement of any civil action filed pursuant to this part."

8. In *Abelar v. American Residential Services, L.L.C*, the court analyzed the following factors for approving a settlement of PAGA claims, each of which weigh in favor of approval of the Settlement Agreement in this case as well: (1) notice to the LWDA of the proposed settlement; (2) adequacy of relief, given the strength of the case and the possibility of further litigation; (3) extent of discovery and the state of the proceedings; (4) adequate representative; (5) experience and views of counsel; (6) arms-length negotiations and absence of evidence of collusion; (7) equitable treatment of aggrieved employees; and (8) public interest factors for a PAGA settlement. *Abelar v. American Residential Services, L.L.C*., Case No. 5:19-cv-00021-JGB-SHK, 2019 WL 6054607, at *3-5 (C.D. Cal. Nov. 14, 2019).

9. The settlement was reached following arm's length negotiations between experienced counsel after a full-day private mediation session with a highly experienced mediator. Crosner Decl. ¶ 6.

10. Based upon their experience litigating representative actions, including attaining class certification and court approval of PAGA settlements, counsel for Plaintiff believes the settlement here is fair and reasonable and warrants approval by the Court. Crosner Decl. ¶ 23. Plaintiff's Counsel has explained the facts, circumstances, and legal authority regarding why this settlement is fair and reasonable and provides meaningful relief in paragraphs 22 through 47 of the Crosner Decl., and Defendants do not object to the representations stated therein.

11. The Parties understand, acknowledge, and agree that this settlement constitutes a compromise of Plaintiff's PAGA Representative Claims, and that it is the desire and intention of the Parties to affect a final and complete resolution of the Action, including the PAGA Representative Claims, against Defendants. The Parties further acknowledge that this Settlement Agreement is a compromise of disputed claims and that nothing in this Settlement Agreement shall be construed as an

admission of liability by Defendants. Crosner Decl., **Exhibit "1."**

12. Defendants specifically disclaim any liability to Plaintiff, the aggrieved employees, or any other allegedly aggrieved employee for any alleged violation of his or her rights, or for any alleged violation of any order, law, statute, duty, or contract.

13. The Parties agree that there are legitimate risks with Plaintiff pursuing her PAGA claims to trial, because the issue of whether employees were entitled to meal periods, rest periods, and overtime wages could all be stricken as unmanageable as representative claims due to the need for individualized consideration of such employees' daily duties and activities. Because of these individualized issues, the Parties agree that further litigation would pose a substantial risk of non-recovery to the represented aggrieved employees. Crosner Decl. ¶¶ 22-47. *See Amiri v. Cox Communications California, LLC*, 272 F. Supp. 3d 1187, 1194 (C.D. Cal. 2017) (finding "Plaintiff's PAGA representative claim based on failure to provide meal and rest periods…requires numerous individualized determinations that make his claims unmanageable").

14. Furthermore, the Parties agree that there are material legal and factual disputes as to each of the alleged violations that are the basis for the PAGA claims, and Defendants vigorously dispute the merits of each of the underlying claims, which means there is a significant risk of Plaintiff not prevailing on the merits of any of the alleged PAGA violations. Crosner Decl. ¶ 30. *Green v. Lawrence Service Co.*, 2013 WL 3907506 at *5 (C.D. Cal. July 23, 2013) (explaining the success of any PAGA claim is determined by the merits of the underlying claims).

15. The Parties also agree that there are legitimate risks to recovery of PAGA penalties, as the Court has ultimate discretion to reduce penalties pursuant to Cal. Lab. Code § 2699(e)(2). Crosner Decl. ¶ 27. *See, e.g., Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030 (N.D. Cal. 2016) (a significant reduction in penalties was appropriate in part because the employer did not "deliberately evad[e] a clear obligation to

provide legally required pay and benefits to employees…"); *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 529 (2018) (affirming the trial court's reduction of PAGA penalties to just $5.00 per pay period).

16. The Parties agree that the settlement amount is fair and adequate in achieving PAGA's objective. While "[a PAGA] action is … designed to protect the public and penalize the employer for past illegal conduct," a reviewing court must take into account the fact that settlement of a PAGA claim – like any settlement – involves a "compromise" that stops short of rendering findings of liability and damages. *Mendez v. Tween Brands, Inc.*, 2010 WL 2650571, *2 (E.D. Cal. July 1, 2010). Moreover, the court must not lose sight of the fact that "[u]nlike a class action seeking damages or injunctive relief for injured employees, the purpose of PAGA is to incentivize private parties to recover civil penalties for the government that otherwise may not have been assessed and collected by overburdened state enforcement agencies." *Ochoa-Hernandez v. Cjaders Foods, Inc.*, 2010 WL 1340777, *4 (N.D. Cal. April 2, 2010). Crosner Decl. ¶ 44.

17. The Parties agree that this result is fair and reasonable, as settlements of PAGA claims impacting thousands of individuals have been approved as reasonable for amounts far less than the payments in this case. Crosner Decl. ¶ 23. *See Franco v. Ruiz Food Products, Inc.*, WL 5941801, *14 (E.D. Cal. November 27, 2012) ("Defendant has agreed to pay $10,000 as civil penalties pursuant to the PAGA…Of the $10,000, 75 percent ($7,500) will be paid to the State of California, and the remainder ($2,500) will benefit the class…The Court finds that the PAGA payment is set at a reasonable amount, and it shall be approved."); *Garcia v. Gordon Trucking, Inc.*, 2012 WL 5364575, *7 (E.D. Cal. October 31, 2012) ("GTI agrees to allocate $10,000 to Plaintiffs' PAGA claims, and will pay $7,500 to the LWDA, and $2,500 to participating Class Members on a pro-rata basis. This comports with settlement approval of PAGA awards in other cases…Therefore, the Court will approve the allocation of the Settlement to Plaintiffs' PAGA claim."); *Schiller v.*

*David's Bridal, Inc.*, 2012 WL 2117001, *14 (E.D. Cal. June 11, 2012) ("Pursuant to the Settlement Agreement, the parties have agreed to pay $7,500 to the California Labor and Workforce Development Agency. … The Court finds that the PAGA Payment is set at a reasonable amount, and recommends that it be approved."); *Gong-Chun v. Aetna, Inc.*, 2012 WL 2872788, *17 (E.D. Cal. July 11, 2012) ("Pursuant to the Settlement Agreement, Defendant has agreed to pay $15,000 to the California Labor and Workforce Development Agency….The Court finds the PAGA payment is set at a reasonable amount, and it shall be approved.").

## THE TERMS OF THE PAGA SETTLEMENT

18. The aggrieved employees, or PAGA Members, are defined as all current and former hourly-paid, non-exempt employees who were employed by Defendant AppleOne and assigned to work at Defendants Sierra Aluminum and/or Samuel, Son & Co. in California at any time from September 4, 2018 through November 29, 2020. Crosner Decl., **Exhibit "1,"** ¶ 11.

19. Paragraph 25 of the Joint Stipulation of PAGA Settlement and Release calls for a non-reversionary $215,000 to be paid by Defendants as a Gross Settlement Amount, within 10 business days after the Effective Date of the Settlement (which will be the first date upon which all of the following events have occurred: (1) the Settlement Agreement has been executed by all Parties and their counsel; (2) notice has been properly given by Plaintiff's counsel to the LWDA of the settlement as required by PAGA; (3) the Parties have obtained Court approval of the settlement; and (4) the later of (a) the date 60 days after the entry of the Final Order and Judgement, if no motions for reconsideration and no appeals or other efforts to obtain review have been filed; or (b) in the event that a motion for reconsideration, and appeal or other effort to obtain review of the Final Order and Judgment is filed, the date after the last date for filing a request for further review is requested or can be requested). Out of this Gross Settlement Amount, up to 33.33% ($71,666) is to be paid to Plaintiff's counsel as attorneys' fees, subject to Court approval, $10,145.32

1. is to be paid to Plaintiff's counsel as litigation costs, and $6,476 is to be allocated towards settlement administration costs. The PAGA Payment $126,712.68 is to be split between the LWDA and the aggrieved employees. Out of this PAGA Payment, 75% ($95,034.51) is to be paid to the LWDA, and 25% ($31,678.17) is to be paid to the aggrieved employees on a pro rata basis based upon the number of pay periods worked by each aggrieved employee consistent with Cal. Lab. Code § 2699(i). Should the Court order that the attorneys' fees, costs, or settlement administration amounts to be less than requested, then the difference will be added to the PAGA Payment to be included in the distribution between the LWDA and the aggrieved employees. Crosner Decl., **Exhibit "1,"** ¶ 25.

20. If the Court approves the settlement, payments will be made as follows:

  A. Within 10 business days of the Effective Date, Defendant AppleOne will provide to the Settlement Administrator a list of all aggrieved employees, including each aggrieved employee's full name; most recent mailing address and telephone number; Social Security number; the number of workweeks during which each aggrieved employee worked for Defendants Sierra Aluminum and/or Samuel, Son & Co. from September 4, 2018 through November 29, 2020, and any other relevant information needed to calculate settlement payments. The Settlement Administrator shall maintain all information received from Defendants confidential to itself and Defendants' Counsel.  The list of aggrieved employees shall be provided in a redacted format (with all personal and identifying information of the aggrieved employees, including names, addresses, phone numbers, and social security numbers redacted and/or omitted) to all Counsel solely in order to verify calculations regarding the PAGA Payments.  Crosner Decl., **Exhibit "1,"** ¶¶ 12, 33.

  B. Within ten (10) business days after the Effective Date of the Settlement, Defendants shall wire to the Settlement Administrator the non-

reversionary Gross Settlement Amount of $215,000. Defendant AppleOne shall be responsible for funding $15,000.00 of the Gross Settlement Amount and Defendant Samuel, Son & Co. shall be responsible for funding the remaining $200,000.00 of the Gross Settlement Amount. Crosner Decl., **Exhibit "1,"** ¶¶ 24-25.

C. The Settlement Administrator will perform all settlement administration duties, including: (1) establish and maintain a Qualified Settlement Fund; (2) conduct a National Change of Address search for all aggrieved employees and re-mailing of any checks returned with a forwarding address; (3) calculate and pay the PAGA Payment each aggrieved employee is eligible to receive (this service will include settlement proceed calculation, printing and issuance of Settlement Payment Checks, preparation of 1099 IRS Tax Forms, and basic accounting for and payment of employee tax withholdings); (4) tender any PAGA Payments to aggrieved employees that are returned as undeliverable or remain uncashed within 180 days of payment to the California State Controller's Unclaimed Property Fund in the name of the aggrieved employees whose checks were not delivered or cashed; (5) provide declarations and/or other information to the Court as requested by the Parties and/or the Court; and (6) carrying out other related tasks as necessary to effectuate the terms of the Settlement Agreement and any Order of the Court.  The Settlement Administrator shall issue the Notice and payments to the aggrieved employees along with the required IRS forms, and issue payment to the LWDA for PAGA penalties, and Attorneys' Fees and Costs to Plaintiff's Counsel no later than 10 business days after it receives the Gross Settlement Amount from Defendants. Crosner Decl., **Exhibit "1,"** ¶¶ 25, 32.

D. Aggrieved employees shall have 180 calendar days after mailing to cash

their settlement checks. If any aggrieved employee's check is not cashed within that period, the check will be voided and a stop-payment will be issued. Any funds in the Settlement Administrator's account as a result of a failure to timely cash a settlement check shall be distributed to the Controller of the State of California to be held pursuant to the Unclaimed Property Law, California Civil Code §1500, *et. seq.* for the benefit of those aggrieved employees who did not cash their checks until such time that they claim their property. Defendants will not be required to pay any interest on such amounts. Crosner Decl., **Exhibit "1,"** ¶ 35.

21. The Parties have agreed that Atticus Class Action Administration will manage the administration of the settlement payments in accordance with the terms contained with the Joint Stipulation of PAGA Settlement and Release. Crosner Decl. ¶ 8; **Exhibit "1."**

22. Defendants do not oppose Plaintiff's request for attorneys' fees to be paid as 33.33% of the Gross Settlement Amount and for reimbursement of litigation costs in the amount of $10,145.32 . Crosner Decl. ¶¶ 52, 65.

23. Upon the Effective Date, Plaintiff, as the representative for the State of California, will forever and completely release and discharge the Released Parties[2] of any and all claims for civil penalties recoverable under Labor Code section 2699(a), whether known or unknown, that occurred between September 4, 2018 through November 29, 2020 ("PAGA Period") and that are alleged or could have been brought based on the facts, allegations, claims, causes of action and/or legal

---

[2] "Released Parties" means Howroyd-Wright Employment Agency, Inc., Sierra Aluminum Company, Samuel, Son & Co. (USA), Inc., and any of their former and present parents, subsidiaries, affiliates, divisions, corporations in common control, predecessors, successors, and assigns, as well as all past and present officers, directors, employees, partners, shareholders and agents, attorneys, insurers, and any other successors, assigns, or legal representatives. For the avoidance of doubt, affiliates of Howroyd-Wright Employment Agency which are covered by the definition of Released Parties include, but are not limited to: The ACT 1 Group, Inc., AllSourcePPS Inc. and Industrial Apple, Inc. Crosner Decl., Exhibit "1," ¶ 20.

theories described in the operative Fifth Amended Complaint in the Action, including, but not limited to, claims for civil penalties recoverable under Labor Code section 2699(a) due to: (a) failure to provide meal periods and/or pay meal period premium or penalty pay; (b) failure to authorize and permit rest periods and/or pay rest period premium or penalty pay; (c) failure to pay minimum wages; (d) failure to pay overtime wages; (e) failure to pay for all time worked; (f) failure to pay timely pay wages upon termination; (g) failure to timely pay wages during employment; (h) failure to provide accurate, itemized wage statements; (i) failure to keep complete or accurate payroll records (collectively, the "Released Claims"). The release expressly excludes claims for vested benefits, wrongful termination, unemployment insurance, disability, social security, workers' compensation, class claims, and PAGA claims outside of the PAGA Period. Crosner Decl., **Exhibit "1,"** ¶¶ 14, 19.

24. In accordance with *Arias v. Superior Court*, a judgment in "a representative action brought by an aggrieved employee under the Labor Code Private Attorneys General Act of 2004 … is binding not only on the named employee plaintiff but also on government agencies and any aggrieved employee not a party to the proceeding," which the Order Granting Approval of Settlement and Dismissing Action ("Final Order") shall so reflect. *Arias v. Superior Court*, 46 Cal. 4th 969, 985 (2009). The Final Order shall not bind nor release the aggrieved employees of any individual claims. However, in accordance with *Arias*, the Final Order shall be binding on the aggrieved employees as to the Released Claims.

25. Upon the Court's entry of the Final Order, the Parties will: (1) be bound by the terms and conditions of the Settlement Agreement; and (2) be deemed to have waived all objections and oppositions to the fairness, reasonableness, and adequacy of the settlement and the Court's Final Order.

/ / /

26. Therefore, the Parties request that the Court approve the proposed settlement

of this action, approve the proposed PAGA Settlement Notice and enter the accompanying Final Order Granting Approval of the Joint Stipulation of PAGA Settlement and Order of Dismissal accordingly.

**IT IS SO STIPULATED.**

Dated: March 22, 2021          **CROSNER LEGAL, P.C.**
                               **BLUMENTHAL NORDREHAUG**
                               **BHOWMIK DE BLOUW LLP**


                               */s/ Nikki Trenner*
                               Nikki Trenner
                               Attorneys for Plaintiff MORIAH
                               HOLTEGAARD

Dated: March 22, 2021          **OGLETREE, DEAKINS, NASH, SMOAK**
                               **& STEWART, P.C.**


                               */s/ Christopher W. Decker*
                               Christopher W. Decker
                               Attorneys for Defendants SIERRA
                               ALUMINUM COMPANY and SAMUEL,
                               SON & CO. (USA) INC.

Dated: March 22, 2021          **K.P. ROBERTS & ASSOCIATES, APC**


                               */s/ Ryan P. Tish*
                               Ryan P. Tish
                               Attorneys for Defendants SIERRA
                               ALUMINUM COMPANY and SAMUEL,
                               SON & CO. (USA) INC.

### ATTESTATION REGARDING SIGNATURES

I, Nikki Trenner, attest pursuant to L.R. 5-4.3.4 that all signatories listed, and on those behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED: March 22, 2021          */s/ Nikki Trenner*
                               Nikki Trenner